# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MICHAEL OTIS ROBERTSON**                                              **PLAINTIFF**
**ADC #136346**

v.                              No: 4:21-cv-01127-LPR-PSH

**NELSON,** *et al.*                                                    **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Michael Otis Robertson, a former inmate at the Pulaski County Regional Detention Facility ("PCRDF"),[1] filed a *pro se* civil rights complaint on November 16, 2021, and an amended complaint on January 20, 2022 (Doc. Nos. 2

---

[1] Robertson is now incarcerated at the Arkansas Division of Correction's Pine Bluff Unit. *See* Doc. No. 83.

& 29.) Robertson's claims in this case are against Lieutenant Nelson, Sergeant Murphy, and Deputy Gregory Belt (the "Defendants") and stem from an incident that occurred in September 2020. *Id.* The Court granted Robertson's application for leave to proceed *in forma pauperis* and directed that the Defendants be served. *See* Doc. No. 13.

Pending before the Court for recommended disposition is the Defendants' motion for summary judgment with supporting brief and statement of indisputable material facts asserting that they are entitled to judgment as a matter of law on the merits of Robertson's claims (Doc. Nos. 63-65). Robertson filed a response to the Defendants' statement of facts (Doc. No. 71). At the Court's request, the Defendants supplemented the record. (Doc. Nos. 85, 87). For the reasons set forth in this Recommendation, the undersigned recommends that the Defendants' motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir.

2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). "The nonmoving party's allegations must be supported by 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Id.* (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not

genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Facts

#### *Robertson's Allegations*

In his amended complaint, Robertson alleges:

On Sept 17, 2020 7:30pm all the way intell 11:00pm or 12:00am I Michael Otis Robertson got jumped on by Sgt. Murphy, Deputy Belt and Ms. Lt. Nelson authorized the hit on me about some paper. That was on my camera that was in my cell. All 3 of the officer came, in put hand cuff on me and shackles on me, that is when Sgt. Murphy and Belt started using excessive force Murphy appled pressure toward my right hand in broke my knuckle. That was excessive force. Mr. Belt had my left hand He was appling pressure he was twisting the hand cuff in drew blood from my wrist that was excessive force they both had body cam on to in I was in a cell with a camera because I was on suicide, so they didn't have to come in my room in jumped on me Belt and Murphy  I was hurt badly I need the nurse that when they all left. I was calling for

> the doctor they know they was wrong so they came back in for they action that they put on me is a reaction from me, I put my smock up to the door they sprayed me, in thin drag me out the room in was applying pressure use excessive force in front on the nurse they put me back in the room without putting me in the shower cruel unusually punishment. I was burning badly for 2 day the nurse see two days later in said my knuckle was injury she order me a hand brace in the sheriff came in seen me about that to in I have witness to doctor statement to. Dis is the God Honest truth. . . .

Doc. No. 29 at 4-5.[2]

### *The September 15, 2020 Incident*

The Defendants claim that the incident in issue began when Robertson, who was on suicide watch, covered his in-cell camera with paper so that he could not be monitored. For Robertson's safety, several officers sought to enter Robertson's cell to remove the paper as well as other trash in his cell. Robertson refused to put his hands through the food trap of the cell door so that he could be handcuffed before officers entered his cell. According to the Defendants, when officers opened the door, Robertson was physically and verbally combative, non-compliant with orders, and attempted to strike them. Defendant Belt administered a 1-2 second burst of chemical spray to de-escalate Robertson. Robertson was handcuffed and removed from his cell. He continued to yell and curse at PCRDF staff, threatening to kill them and spitting at them. According to the Defendants, after a spit mask was

---

[2] All quotes are transcribed verbatim without any corrections for misspellings or mistakes.

placed, medical staff decontaminated and assessed Robertson and he was returned to his cell.

In support of their motion for summary judgment, the Defendants submitted video footage of the incident with Robertson from September 15, 2020, at 6:30 a.m., along with reports prepared by the officers who were involved in that incident.[3] *See* Doc. Nos. 67 & 65-5 at 2-11. According to these incident reports and video footage, the incident described by Robertson occurred on September 15, 2020, not September 17, 2020, as originally alleged by Robertson.[4] The video footage from September 15 (including footage from body cameras worn by Defendants Belt and Nelson) is consistent with the Defendants' description of the incident as well as with the incident reports. *See* Doc. No. 67. There is no indication Defendant Murphy was present during this incident.[5] *Id.* Sergeant Carder noted in a report made approximately an hour later, at 7:30 a.m., that there was spit with blood on Robertson's window. *Id.* at 12. He could see no visible injuries but knew that Robertson had been involved in an altercation an hour earlier. *Id.* He called for

---

[3] Defendants submitted the affidavit of Sergeant Evora Clark authenticating the incident reports and other documents from Robertson's jail file (Doc. No. 65-1).

[4] Robertson also alleged in his amended complaint that the incident began at 7:30 p.m. (Doc. No. 29 at 4).

[5] Murphy also submitted an affidavit stating that he was not present during the September 15, 2020 incident and had no physical contact with Robertson that day (Doc. No. 65-8). Robertson acknowledges that Murphy was not present during the 6:30 a.m. incident. *See* Doc. No. 71 at 2.

medical personnel, who treated minor cuts on Robertson's finger and wrist. *Id.* A photo of Robertson's hands and wrists taken on September 15, 2020, do not show any visible injuries. *Id.* at 14.

Robertson does not dispute that the incident in question occurred on September 15, 2020, as opposed to September 17, in his response to the Defendants' statement of facts. *See* Doc. No. 71. He also does not dispute any of the facts provided by the Defendants concerning the incident that occurred at 6:30 a.m. on September 15, 2020. *Id.* However, Robertson insists that *two* incidents occurred on this date – the one documented by jail staff as occurring at 6:30 a.m., and another *earlier* incident in which all the Defendants came to his cell and used the force he describes in his amended complaint. Robertson has provided no evidence that this earlier incident occurred beyond his own statements.

In response to this Court's orders requesting clarification as to the number of incidents that occurred on September 15,[6] the Defendants provided an affidavit from each defendant and the affidavit of Deputy Kristin McCann. Doc. Nos. 87-1 – 87-4. McCann states that she is the custodian of records for the PCRDF and after

---

[6] The Court's first Order directing Defendants to provide supplemental information mistakenly referred to the date of the incident as November 15, 2020, instead of September 15, 2020. Doc. No. 84. A second order was entered to correct that mistake and directed Defendants to provide supplemental information regarding September 15, 2020. Doc. No. 86. That Order mistakenly referenced 6:30 p.m. instead of 6:30 a.m.; however, this mistake is of no consequence as there is no record of any other incident occurring on that date, whether in the a.m. or p.m.

searching those records and Robertson's jail file, she found no record of any altercation or incident involving Robertson that occurred earlier than 6:30 a.m. on September 15, 2020. Doc. No. 87-1 at ¶¶ 2-3. She further explained that PCRDF policy dictates that a "Code Blue" be called whenever there is an incident between an inmate and deputies. *Id.* at ¶ 4. During a Code Blue, PCRDF personnel respond to the scene to assist as needed, and afterwards, the personnel involved complete incident reports. *Id.* at ¶¶ 4-5. Relevant video footage is also preserved. *Id.* at ¶5. In each of their affidavits, Defendants Belt and Nelson stated that they did not enter Robertson's cell on September 15, 2020, prior to the 6:30 a.m. incident recorded and documented. *See* Doc. Nos. 87-2 & 87-4. Sergeant Murphy stated that he did not enter Robertson's cell at all on September 15, 2020, and was not aware of any incident involving Robertson other than the one documented that occurred at 6:30 a.m. Doc. No. 87-3.

### *Inmates Requests and Medical Records*

On September 15, 2020, PCRDF medical personnel noted that there had been a "Code Blue" involving Robertson that day, and that he was "medically cleared to remain in unit." Doc. No. 65-4 at 2 (notations made at 2:14 p.m.). Later that day, he was seen by a mental health professional and removed from suicide watch. *Id.* at 2-3.

Robertson submitted a sick call on September 17, 2020, with no specific complaint. Doc. No. 65-3 at 4. On September 18, 2020, at 12:18 a.m., PCRDF medical personnel responded to a complaint by Robertson in his unit and noted:

> c/o pain "in the wrists, back, neck because they used excessive force on me the other day. You were here, just look at the tapes." Full ROM throughout body, ROM in neck with no issues. No abnormalities/deformities noted. No distress noted.

Doc. No. 65-4 at 4. Robertson was prescribed 200 mg, 2 tablets ibuprofen for no more than 7 days and 325 mg of Tylenol. *Id.* at 4, 6.

On September 20, 2020, an x-ray of Robertson's right hand was completed with the following findings: "AP, lateral, and oblique views of the right hand show no radiographic evidence of bone or soft tissue abnormality. No acute injury is noted." Doc. No. 65-4 at 1.

On October 6, 2020, Robertson submitted another sick call, stating, "I BEEN ASKING TO SEE THE MEDICAL SEEN THE SEPTEMBER THE 14 OF 2020 I NEED HELP FOR WHAT HAPPEN TO ME SEPT 14 15 20 21 ACTION NEED TO BE TAKEN." Doc. No. 65-3 at 4. He was directed to be more specific. *Id.*

The same day, Robertson also submitted an Investigation Tipline, stating: "I WANT LT NEILSON, GARY BELT, SGT. MURPTY, AND MRS RIMMER IN COBB NOTHER INVESTIGATION PLEASE. ON SEPTEMBER THE 14, 15, 20, 21 OF 2020 FOR JUMPING ON ME." Doc. No. 65-3 at 3.

On October 7, 2020, Robertson submitted a grievance, stating:

> I just want the FOYA so I can see Lt-Nicole nelson, Gregory Belt, Sgt. Murphy jump on my. Yes they beet me up on once, not two but three time that is wrong what that did Im hurting right now. In the medical gave me 16 pills that tried to kill me. I need answer for what happen to me I want to put charge on this deputy

Doc. No. 65-4 at 14.

On October 11, 2020, Robertson submitted a sick call request asking that his wrist be checked. Doc. No. 65-3 at 5. On October 23, 2020, he submitted a sick call request for an MRI for his hand. *Id.* at 6. In response, staff asked, "Mr. Robertson, why do you need an MRI? What kind of issues are you having with you hand?" *Id.*

From November 10, 2020, through January 10, 2021 (when he was released from the PCRDF[7]), Robertson submitted approximately 25 additional medical requests concerning his hand, neck, arm, and/or back. Doc. No. 65-3 at 7-32. During this time, Robertson was prescribed various combinations of the following medications and treatments: Methocarbamol (a muscle relaxer), Naproxen (a painkiller), Tylenol (a painkiller), Ibuprofen (a painkiller), Meloxicam (a painkiller), and cold compresses. *Id.* at 7-13.

On December 10, 2020, Robertson submitted a grievance, stating:

> As of 12-10-20 I am still suffering from the injuries in the federal case matters against Pulaski Co. Jail 4:20-cv-01418 bsm jtr, 420cv01417 kcbpsh, 420cv01398kgbbd, 420cv01412brwpsh, 420cv01259lprpsh. And the infirmary here at the jail by the name of jane doe company had knowledge of this according to my paper grievances and innfirrmaryy still deprived me of my right to get real treatment which has caused me

---

[7] *See* Doc. No. 65-2 at 2.

medical delay and interference I want to go to real hospitals for my injuries.

Doc. No. 65-3 at 2. In response, staff noted that Robertson had been seen by medical personnel. *Id.*

On December 1, 2020, Robertson was informed that hand and back braces were deemed medically unnecessary. Doc. No. 65-3 at 17. On December 21, 2020, PCRDF medical personnel replied to a sick call from Robertson, stating, "X-ray showed no fx or dislocation NSAIDs and compression for hand. NSAIDs and stretching for back." Doc. No. 65-3 at 28.

On December 26, 2020, PCRDF medical personnel noted:

> Rescheduled provider sick call. Reordered methocarbamol. I have seen pt about his hand several times already. X-rays have been seen and are normal. I have explained this to pt at 3 visits. He is insisting on MRI, but it is not approved. Hand brace was ordered.

Doc. No. 65-4 at 15.

On January 7, 2021, PCRDF medical personnel replied to a sick call from Robertson, stating, "The doctor has seen you three times about your hand. Xrays have been done and show no abnormalities. The doctor has ordered you a wrist brace, but it has not arrived yet. When it does we will bring it to you[.]" Doc. No. 65-3 at 29.

## IV. Analysis

### A. Official Capacity Claims

Robertson sues the Defendants in their official capacities. Doc. No. 29 at 2. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, as county employees, the Defendants can be held liable in their official capacities in this case only if Robertson can establish that a constitutional violation was committed pursuant to "(1) an 'official municipal policy,' . . . (2) an unofficial 'custom,' . . . ; or (3) a deliberately indifferent failure to train or supervise . . . ." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (internal citations omitted). Robertson describes an isolated incident in his amended complaint and does not assert that a custom or policy of Pulaski County was the moving force behind the claimed violations of his constitutional rights. Accordingly, the Defendants are entitled to summary judgment on Robertson's official capacity claims.

### B.     *Individual Capacity Claims*

The Defendants assert that they are entitled to qualified immunity[8] with respect to Robertson's individual capacity excessive force claims because Robertson was not subjected to excessive force on the date in question. Additionally, defendant Murphy seeks dismissal because he was not present at any time or involved in any way with the September 15 incident.

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). The Defendants have produced evidence concerning the incident involving Robertson and Defendants Belt and

---

[8] Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Nelson on November 15, 2020, at 6:30 a.m., and claim that Robertson was not subjected to excessive force. Robertson does not dispute the facts presented by the Defendants about this incident. The Court agrees that there is no genuine dispute as to any material fact related to the 6:30 a.m. incident, and the material facts establish that the Defendants did not subject Robertson to excessive force. The use of force by Belt and Nelson during this event was applied in a good faith effort to restore discipline. Additionally, Robertson has failed to offer proof that Murphy was present. Thus, to the extent the incident about which Robertson complains is in fact the incident the Defendants reference, Belt and Nelson are entitled to qualified immunity, and to judgment as a matter of law as to that incident. Murphy is also entitled to dismissal because there is no genuine dispute as to any material fact regarding his involvement – he simply was not there.

As referenced earlier, Robertson maintains that the actions of the Defendants during the 6:30 a.m. incident on September 15, 2020, are not the basis of his claim. Instead, Robertson claims that Belt, Nelson, and Murphy entered his cell some time *before* 6:30 a.m. on September 15, 2020, and subjected him to excessive force. He alleges that Murphy, Belt, and Nelson "jumped" him and handcuffed him, that Murphy and Belt twisted his hands causing injuries to his wrists, and that Murphy broke a knuckle on his right hand. Doc. No. 29 at 6. He also claims that he asked for medical help, and alleges that the Defendants "know they was wrong so they

came back in" before he put a smock up to his door and they sprayed him with pepper spray. Doc. No. 29 at 4-5. Robertson does not indicate there was any significant lapse of time before the Defendants came back to his cell. And in his response to the Defendants' statement of facts, he simply states that the incident described by the Defendants was the "second time."[9]  *See* Doc. No. 71. Defendants Belt and Nelson have provided affidavit testimony that they had no contact with Robertson on September 15, 2020 other than during the incident that began at 6:30 a.m. Murphy has provided an affidavit stating that he did not have any contact with Robertson that day. Non-party Deputy Kristin McCann has submitted an affidavit stating that there is no record of any incident involving Robertson that day other than the 6:30 a.m. incident. *See* Doc. No. 87-1. Nelson's affidavit explains that a "Code Blue" is called any time there is an altercation between an inmate and deputies, and the incident is documented with incident reports, as was the case in the 6:30 a.m. incident. *Id.* Despite Robertson's assertions of an earlier incident, he has come forward with no evidence to support his allegation that there was another, earlier incident involving the Defendants on this date.[10]

---

[9] Robertson attaches his original complaint in this case to his response; that complaint also describes what appears to be one incident with no significant time lapse between the force applied and the defendants coming back to spray him. *See* Doc. No. 71 at 3-5 (attaching pages 4-6 of Doc. No. 2).

[10] A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d

There is also no evidence to support Robertson's contention that the Defendants entered his cell on September 15, 2020, and broke his knuckle or caused his wrist to bleed, as he alleges. In his amended complaint, Robertson alleges that Murphy applied pressure to his right hand, breaking his knuckle. Doc. No. 29 at 4. He further alleges that Belt twisted his handcuff, drawing blood from his wrist. *Id.* The record in this case shows that Robertson suffered no such injuries to his hand or wrist other than some minor scrapes. After the 6:30 a.m. incident, Robertson was medically cleared to remain in the unit, and no significant injuries were noted. Doc. No. 65-4 at 2. Photos taken of his hands after the 6:30 a.m. incident do not show any significant injuries.[11] Doc. No. 65-5 at 14. Approximately an hour after the incident, Sergeant Carder noted that Robertson had minor cuts on his finger and wrist. *Id.* at 12. On September 18, 2020, Robertson complained of pain in both

---

531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

[11] A plaintiff need not allege significant injuries to state an excessive force claim. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-79 (2010) (abrogating the *de minimis injury* rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim). However, more than *de minimis* force is required. *See Irving v. Dormire*, *supra* ("[N]ot every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does.").

wrists resulting from excessive force, but a full range of motion (ROM) was noted along with no abnormalities or defects. Doc. No. 65-4 at 4. On September 20, 2020, an X-ray of Robertson's right hand showed no abnormality or acute injury. *Id.* at 1. These records establish that Robertson did not suffer a broken knuckle as he alleges or any significant injury to his wrists or hands.

When opposing parties tell two different stories, as is the case here, the Court is required to view genuinely disputed material facts in a light most favorable to the nonmoving party, as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them. In this case, the record clearly contradicts Robertson's contention that the Defendants entered his cell before 6:30 a.m. on September 15, 2020, broke his knuckle, and caused his wrists to bleed as he alleges in his amended complaint. The Defendants are therefore entitled to summary judgment.

## V. Conclusion

The Defendants' motion for summary judgment (Doc. No. 63) should be granted, and judgment should be awarded in favor of the Defendants on Robertson's claims.

IT IS SO RECOMMENDED this 10th day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE